[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-12907

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CLIFFORD LAINES, JR.,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cr-20980-CMA-1

_____

_____

No. 21-11535

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CLIFFORD LAINES, JR.,

Defendant-Appellant.

———————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cr-20980-CMA-1

———————————

Before WILLIAM PRYOR, Chief Judge, and ROSENBAUM and MARCUS,
Circuit Judges.

WILLIAM PRYOR, Chief Judge:

In this appeal, Clifford Laines challenges his drug- and fire-arm-related convictions as well as his sentence under the Armed Career Criminal Act. Laines argues that insufficient evidence supports two of his convictions and that he is entitled to a new trial based on *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United*

*States*, 405 U.S. 150 (1972). But sufficient evidence supports Laines's convictions. He has also not established that it is reasonably probable that a new trial would result in a different outcome as required by *Brady*, nor has he provided any evidence of perjured testimony as required by *Giglio*. Finally, Laines argues for the first time on appeal that the district court erroneously sentenced him because his earlier cocaine conviction under Florida law does not constitute a serious drug offense under the Armed Career Criminal Act. But the district court did not plainly err in sentencing him. We affirm Laines's convictions and sentence.

## I. BACKGROUND

Clifford Laines was released from prison in September 2018 after serving more than 25 years as punishment for second-degree murder. He was later arrested on October 7, 2018, and November 4, 2019. This appeal concerns convictions that arose from these arrests.

On October 7, 2018, police officers conducted a traffic stop on a vehicle in which Laines was a passenger. When the vehicle came to a stop, Laines exited and began walking away. One of the police officers noticed a bulge in Laines's waistband and ordered him to stop walking. The officer caught up with Laines, patted him down, and removed a loaded gun with an extended magazine from his waistband. Laines was arrested, indicted for being a felon in possession of a firearm, and released on bond.

On November 4, 2019, three police officers—Jordy Yanes-Martel, Carlos Romero, and Bryan Blanco—were at a gas station.

Officer Yanes-Martel noticed Laines riding a purple bicycle and carrying a bag. Officer Yanes-Martel recalled a "be on the lookout" order recently issued for a person matching Laines's description, so he alerted his fellow officers. When Officer Romero ordered Laines to stop, Laines fled.

The officers gave chase, two on foot and one in a patrol car. Officer Blanco, who pursued by car, caught up with Laines first and tased him to prevent him from jumping over a residential fence. When the officers searched Laines, they found a gun and a "substantial amount of drugs" in his backpack. The drugs included marijuana, heroin, and cocaine, as well as substances that could be used to dilute or counterfeit those drugs. The drugs were primarily contained in small plastic bags or plastic wrap inside of a mason jar. Laines was carrying $244 in cash in varying denominations. He also carried a two-dollar bill in the mason jar, which drug dealers sometimes carry for good luck. A grand jury charged Laines with five counts arising from his possession of a firearm and possession of illegal drugs with the intent to distribute them.

At trial, Laines objected that a prosecution witness impermissibly testified to the ultimate issue of whether he intended the drugs he possessed for personal use or distribution. *See* FED. R. EVID. 704(b). While examining expert witness Shaun Perry, an agent for the federal Drug Enforcement Administration, the prosecutor referred to a photograph of the packages of drugs found in Laines's bag. The prosecutor asked the witness "whether or not [the drugs] would be for personal use or for distribution, based on

[his] training and experience[.]" Agent Perry replied, "This is definitely for distribution. This wouldn't be consistent with someone just using it for personal use."

After the defense moved to strike the testimony, the district court instructed the jury to disregard it. Later, Laines moved under Rule 29 for a judgment of acquittal as to counts four and five on the ground that, without Agent Perry's stricken testimony, there was no evidence that Laines had the intention to distribute the drugs. The prosecution responded by describing other evidence that could support a finding of intent. The district court denied the motion.

After cross-examining Officer Blanco, Laines's attorneys stated that they learned for the first time that he had searched Laines's cell phone at the police station after Laines was arrested in November 2019. Blanco testified that after Laines had refused to identify himself to the police and the officers found no identification on his person, Blanco searched the phone for evidence of Laines's identity. Officer Blanco further explained that the cell phone was unlocked but that he did not have permission from Laines or a warrant to conduct a search. Blanco testified that he looked at the phone for "[j]ust a few seconds." He opened the photo gallery application in search of "[a]nything that might have [Laines's] name on it" and found a photo of Laines's Florida identification card. Officer Blanco testified that he did not remember if he had searched texts, email, call history, or social media. He testified that he did not look for any information about individuals

relevant to the investigation or "[a]nything related to" guns or drug sales. He did not recall whether he had seen any photographs of drugs or guns. Contrary to Blanco's testimony that he was alone, Officer Romero testified that he had been present during the phone search, but he did not recall whether any application other than the photo gallery was searched.

Defense counsel moved for a mistrial. She argued that the search of a cell phone "needs to be disclosed to the defense," especially because the defense had "asked the Government, at the[] discovery conference . . . if the cell phone had been searched or viewed and was told no." Initially, the prosecutors responded that they had no previous knowledge of the search, but two days later they admitted that the prosecutor first assigned to the case had been aware. The prosecution did not deny that the search was "improper" but maintained that "there ha[d] been no evidence that ha[d] come out at trial that was as a result of [Officer Blanco] looking into the phone." The district court denied the motion for a mistrial.

The jury convicted Laines of being a felon in possession of a firearm and ammunition on October 7, 2018, 18 U.S.C. § 922(g)(1); being a felon in possession of a firearm and ammunition on November 4, 2019, *id.*; knowingly possessing cocaine or heroin with intent to distribute on November 4, 2019, 21 U.S.C. § 841(a)(1); and knowingly possessing a firearm in furtherance of a drug trafficking offense on November 4, 2019, 18 U.S.C. § 924(c)(1)(A)(i). Laines was acquitted of a charge for being a felon

in possession of a firearm and ammunition on a separate occasion. The probation office recommended that Laines be sentenced as an armed career criminal based on his prior convictions for possession of cocaine with intent to sell, resisting arrest with violence, and second-degree murder. *See* 18 U.S.C. § 924(e)(1). Laines did not object to either the facts of his prior convictions or his status as an armed career criminal. The district court sentenced Laines to 300 months of imprisonment followed by five years of supervised release.

Before he was sentenced, Laines moved for a new trial on the counts arising from his November 2019 arrest on the ground that the police had unconstitutionally searched his phone. Laines further argued that the government was obligated to disclose the illegal search and disclose that the search did not reveal any evidence of drug trafficking because this information could be used for exculpatory and impeachment purposes. The district court denied the motion.

Laines later moved again for a new trial on the counts that arose from the November 2019 arrest because Officer Yanes-Martel—one of the officers who arrested Laines and served as a witness for the prosecution—had allegedly committed misconduct and was the subject of internal investigations. Laines listed three incidents of misconduct by Officer Yanes-Martel, occurring on January 14, February 3, and March 22, 2020. In January, Yanes-Martel allegedly "used excessive force while making an illegal arrest and subsequently falsified information in police reports." In February, Yanes-

Martel allegedly "failed to follow procedure regarding body worn cameras and pat-downs of an arrestee." In March, Yanes-Martel allegedly used excessive force when he "str[uck] an arrestee twice in the head with his elbow." Two of these incidents took place before Laines's trial, and the third took place between his trial and sentencing. An investigation into one of these incidents also began before trial, and two other investigations were opened between trial and sentencing.

The government contends that it was unaware of the allegations before trial and that it had been informed of only one investigation before sentencing. Prosecutors initially interviewed Officer Yanes-Martel in November 2019, shortly before the trial was originally scheduled to take place and before any of the incidents had occurred. According to the prosecution, in February 2020, the trial team requested information about any charges or investigations concerning Yanes-Martel from his police department, which did not respond until March 17, 2020—after trial. And that response, the government tells us, "indicated only a pending disciplinary matter related to" the February incident. The government further contends that the trial team was not even aware of the police department's response until Laines requested information respecting the alleged misconduct.

Laines asserts that he learned about these investigations only after he had filed his appeal. For this reason, he styled his second motion for a new trial as a request for an indicative ruling that would inform this Court that the district court "would grant Mr.

Laines' Second Motion for a New Trial if the Court of Appeals were to remand . . . for that purpose." (Citing FED. R. CRIM. P. 37.) The district court denied the motion. It found that "the Government's case against [Laines] rested on overwhelming evidence—including recordings from officers' body worn cameras—independent of" Yanes-Martel's testimony.

## II. STANDARDS OF REVIEW

Three standards govern our review. "We review both a challenge to the sufficiency of the evidence and the denial of a Rule 29 motion for judgment of acquittal *de novo*." *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011). "We view the evidence in the light most favorable to the government, making all reasonable inferences and credibility choices in the government's favor, and then determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* (alteration adopted) (citation and internal quotation marks omitted). "A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Capers*, 708 F.3d 1286, 1297 (11th Cir. 2013) (quoting *United States v. Herrera*, 931 F.2d 761, 762 (11th Cir. 1991)). "[W]e review an alleged *Brady-Giglio* violation *de novo* and the denial of a motion for a new trial for an abuse of discretion." *United States v. Gallardo*, 977 F.3d 1126, 1142 n.12 (11th Cir. 2020). Finally, although we review *de novo* "whether a conviction qualifies as a serious drug offense under the [Armed Career Criminal Act]," *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016),

we review issues raised for the first time on appeal for plain error, *United States v. Bennett*, 472 F.3d 825, 831 (11th Cir. 2006). "This standard requires that there be error, that the error be plain, and that the error affect a substantial right." *Id*. An error is "plain" if "it is 'obvious' or 'clear under current law.'" *United States v. Candelario*, 240 F.3d 1300, 1309 (11th Cir. 2001) (citation omitted). Only then may we "exercise our discretion to notice the forfeited error if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Bennett*, 472 F.3d at 832.

## III. DISCUSSION

We divide our discussion into four parts. First, we explain that the record contains sufficient evidence to support Laines's drug-related convictions. Second, we explain that Laines is not entitled to a new trial based on an alleged *Brady* or *Giglio* violation. Third, we explain that the district court did not plainly err in ruling that Laines's prior cocaine conviction qualified as a "serious drug offense." Finally, we explain that Laines's advisory sentencing guideline range was not erroneously enhanced.

### A. Sufficient Evidence Supports Laines's Drug Convictions.

Laines appeals the denial of his motion for acquittal on the drug-related charges due to insufficiency of the evidence. *See* FED. R. CRIM. P. 29(a). Laines's drug-related convictions required proof beyond a reasonable doubt that Laines intended to distribute the drugs he possessed. *See* 21 U.S.C. § 841(a)(1) (providing that it is "unlawful for any person knowingly or intentionally . . . to . . . possess *with intent to* manufacture, distribute, or dispense, a controlled

substance" (emphasis added)); 18 U.S.C. § 924(c)(l)(A) (providing that "any person who, during and in relation to any . . . *drug trafficking crime* . . . uses or carries a firearm, or who, in furtherance of *any such crime*, possesses a firearm, shall" be punished (emphasis added)); *see also Cintron v. U.S. Att'y Gen.*, 882 F.3d 1380, 1383 (11th Cir. 2018) (explaining that, in general, "simple possession is not punishable as a felony under the [Controlled Substances Act], so it is not a drug trafficking crime" within the meaning of section 924). Laines argues that the only evidence of intent to distribute or engage in drug trafficking was the "inadmissible testimony of Agent Perry," which the district court instructed the jury to disregard. We disagree.

Sufficient evidence supports Laines's drug-related convictions. We have explained that "[i]ntent to distribute can be proven circumstantially." *United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989). For example, "the quantity" of the drug and "the existence of implements such as scales commonly used in . . . distribution" may constitute circumstantial evidence of such intent. *Id.*; *see also United States v. Mercer*, 541 F.3d 1070, 1076 (11th Cir. 2008) (explaining that "the jury could infer intent to distribute" from "a large number of plastic jeweler's bags, [a] 'drug ledger,' the amount of [the drug], the lack of paraphernalia used to consume the drug, and testimony about [the] Defendant's purchase of [drugs]" (footnotes omitted)). The jury heard evidence that Laines's possession of substances that could be used to dilute or "counterfeit" drugs, the division of drugs into small bags, the large quantity of small-denomination cash, the backpack as a method of conveyance, the

type of gun Laines possessed, and the two-dollar bill he carried with the drugs were all consistent with drug sales. On this record, we cannot say that "there is no reasonable construction of the evidence from which the jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Ifediba*, 46 F.4th 1225, 1242 (11th Cir. 2022) (citation and internal quotation marks omitted).

Ordinarily, when the district court instructs the jury to disregard inadmissible testimony as it did here, "the error is cured." *United States v. Benz*, 740 F.2d 903, 916 (11th Cir. 1984). In his reply brief, Laines also argues that Agent Perry's testimony was not only inadmissible but was also so prejudicial that it rendered the error incurable. *See id.* Because Laines failed to argue in his initial brief that the error was incurable, that issue is forfeited. *Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1210 (11th Cir. 2015).

*B. Laines Is Not Entitled to a New Trial Under* Brady *or* Giglio.

Laines twice moved for a new trial, but the district court denied both motions. First, he moved for a new trial under *Brady* based on the revelation at trial that the police unconstitutionally searched Laines's phone after his 2019 arrest. Second, Laines moved for a new trial under *Brady* and *Giglio* based on his discovery, after this appeal was noticed, that an arresting officer and prosecution witness was the subject of internal investigations. Laines appeals the denial of those motions.

Under *Brady v. Maryland*, a court should grant a new trial if the prosecution suppresses favorable evidence that is material to

the defendant's guilt or punishment and that creates a "reasonable probability" of a different trial outcome. *United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002); *see Brady*, 373 U.S. at 87. The defendant must also establish that he did "not possess the evidence and could not obtain the evidence with any reasonable diligence." *Vallejo*, 297 F.3d at 1164. And the Supreme Court explained in *Giglio v. United States* that the due process rights articulated in *Brady* are also violated when "undisclosed evidence" establishes that the prosecution knowingly relied on perjured and material testimony. *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006) (citation omitted); *see Giglio*, 405 U.S. at 154–55.

1. No *Brady* Violation Occurred Regarding the Cell Phone Search.

Laines asserts that he is entitled to a new trial on the charges that arose from his November 2019 arrest under *Brady* because the prosecution failed to disclose in advance of trial that his cell phone had been searched by the police after that arrest. He argues that, had the search been revealed before trial, his trial strategy would have changed in two ways: he would have argued that a lack of evidence of drug trafficking on his phone weighed against a finding of guilt, and he would have used the evidence of the illegal search to impeach Officer Blanco. But Laines's arguments fail to establish that he is entitled to a new trial.

Laines cannot establish that the evidence from his phone was sufficiently favorable to create a reasonable probability of a different result. Laines argues that "[t]he evidence is favorable . . . because the absence of evidence of drug trafficking in the phone is

exculpatory." He asserts that "if the defense had known about the search of the cell phone prior to trial, Mr. Laines would have called his own expert to testify about the absence of the evidence in the cell phone." But Laines offers no support for the proposition that the phone contained no evidence of drug trafficking. As the district court explained, "no one testified regarding the *absence* of evidence of drug trafficking on [Laines's] phone." (Emphasis added.) Testimony that one or two police officers briefly glanced at the phone and did not happen to notice any evidence of drug trafficking proves little. So Laines cannot establish that "there is a reasonable probability" that a different outcome would have resulted as required under *Brady*. *See Vallejo*, 297 F.3d at 1164.

Even if the evidence were exculpatory, Laines also cannot establish that he could not have obtained the evidence with reasonable diligence. Laines asserts that he took the only reasonably diligent step he could when defense counsel asked the prosecution "whether law enforcement searched the phone." But, as the district court explained, we "can presume that [Laines] knows the contents of his own cell phone." Laines could have examined the phone during discovery and made this argument at trial even though he was unaware beforehand that the police had briefly searched the phone after his arrest. So, he could have learned of the evidence with "reasonable diligence," *id.*, before trial.

Finally, Laines cannot establish that he lacked an opportunity to impeach Officer Blanco based on the illegal search of his phone. Laines contends that, because he learned of the search at

trial, he did not have "the time to fully prepare to use the impeach-
ment evidence." But we have recognized that a defendant can "re-
ceive[] . . . information during the trial" and still "fail[] to demon-
strate that the disclosure came so late that it could not be effectively
used." *United States v. Knight*, 867 F.2d 1285, 1289 (11th Cir. 1989).
In an extensive line of questioning before the jury, defense counsel
impeached Officer Blanco for conducting a search that violated the
police department's policy—a policy "based on" the Constitution.
And Laines's conviction does not hinge on Officer Blanco's credi-
bility because Blanco's testimony was corroborated by that of the
other officers and by body camera footage, as we explain later in
this opinion. So Laines has not established "a reasonable probabil-
ity that the outcome would have been different" had the evidence
been disclosed. *See Vallejo*, 297 F.3d at 1164.

> 2. No *Brady* or *Giglio* Violation Occurred Regarding the Witness
> Subject to Internal Investigations.

Laines argues that he is entitled to a new trial under *Brady*
and *Giglio* because Officer Yanes-Martel—one of the officers who
arrested him in 2019 and served as a witness for the government—
was the subject of three internal investigations for misconduct. The
district court denied Laines's motion for a new trial on this basis. It
found that "the Government's case against [Laines] rested on over-
whelming evidence," independent of Yanes-Martel's testimony.

We agree that Laines's argument fails. Under *Giglio*, Laines
would have to prove "that the prosecution's case included perjured

testimony." *Davis*, 465 F.3d at 1253 (citation omitted). He has not done so. He also cannot satisfy *Brady*'s materiality requirement in this circumstance.

Laines contends that the misconduct undermines Officer Yanes-Martel's credibility and, by extension, "undermines the legal basis for the stop" in November 2019. Laines suggests that he would have argued that the initial stop was illegal, so the resulting arrest and search were constitutionally infirm. *See United States v. Jones*, 619 F.2d 494, 498 (5th Cir. 1980); *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). But even if Laines could have proved that the stop was illegal—which we have no reason to believe he could have done—such evidence is not "material either to guilt or to punishment" as required under *Brady*. *Brady*, 373 U.S. at 87; *see also Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1342 n.9 (11th Cir. 2009) (expressing doubt "that *Brady* applies outside the realm of exculpatory evidence and extends to evidence useful to the defense in a fruit-of-the-poisonous-tree quest").

Laines also argues that the misconduct undermines Yanes-Martel's testimony across the board, but the corroborating evidence would be sufficient to support the jury's guilty verdict even if Officer Yanes-Martel had been totally discredited. The other officers' testimony tracked that of Officer Yanes-Martel. Officers Blanco and Romero testified that Laines was riding a purple bicycle, that Officer Yanes-Martel identified him based on the description in an alert, and that Laines fled when ordered to stop. Officer Blanco further testified that he pursued Laines and that he found a

gun and drugs on Laines's person. Forensic analysis, expert testimony, and body camera footage provide further support. So Laines has not established "a reasonable probability that the outcome [of his trial] would have been different" had the information about Officer Yanes-Martel's misconduct been revealed before trial. *Vallejo*, 297 F.3d at 1164.

*C. The District Court Did Not Commit Plain Error When It Classified Laines's Prior Conviction Under Section 893.13(1)(a)(1) of the Florida Statutes as a "Serious Drug Offense."*

Under the Armed Career Criminal Act, if a defendant convicted of being a felon in possession of a firearm under section 922(g) "has three previous convictions . . . for a violent felony or a serious drug offense," a mandatory minimum sentence of 15 years applies. 18 U.S.C. § 924(e)(1). A "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . [as defined in 21 U.S.C. section 802], for which a maximum term of imprisonment of ten years or more is prescribed by law." *Id.* § 924(e)(2)(A)(ii). "To determine whether a defendant's prior conviction qualifies as a predicate offense for a sentencing enhancement, federal courts generally apply the 'categorical approach,' meaning we look only to the elements of the statute under which the defendant was convicted and not at the facts underlying the prior conviction." *United States v. Kushmaul*, 984 F.3d 1359, 1364 (11th Cir. 2021). "[W]e presume that the prior conviction rested upon nothing more than the least of the acts criminalized or the least culpable conduct." *Id.* (citation and internal quotation marks

omitted). That is, the least culpable conduct prohibited under the state law must qualify as a predicate offense, and all the controlled substances covered by the state law must also be controlled substances under federal law.

Laines's status as an armed career criminal is based on three earlier convictions, but—for the first time on appeal—he contests whether only one of them constitutes "a violent felony or a serious drug offense," *see* 18 U.S.C. § 924(e)(1), his conviction for a drug crime under a Florida statute. That statute prohibited the sale, purchase, manufacture, delivery, or possession with intent to distribute of "a controlled substance." FLA. STAT. § 893.13(1)(a)(1) (1991); *see id.* § 893.03 (controlled substance schedule). Laines argues that his prior conviction does not qualify as a "serious drug offense" because, under the categorical approach, the Florida statute is not divisible by drug type and is thus overbroad. He also argues that, even if it were divisible, the Florida statute is still overbroad because its definition of cocaine is more expansive than the federal definition. And he argues that his conviction cannot be a serious drug offense because he was not subject to at least a ten-year maximum sentence under the Florida sentencing guidelines. These arguments fail.

Because Laines did not contest at sentencing whether his prior conviction is a "serious drug offense," we review only for plain error, *Bennett*, 472 F.3d at 831, and Laines cannot satisfy that standard. We have held that a conviction under section 893.13(1) qualifies as a "serious drug offense" under the Armed Career Criminal Act. *See United States v. Travis Smith*, 775 F.3d 1262, 1268 (11th

Cir. 2014); *United States v. Xavier Smith*, 983 F.3d 1213, 1223 (11th Cir. 2020). Laines has identified no decision overruling or abrogating these precedents, so he cannot establish that it is "'obvious' or 'clear under current law'" that the district court erred. *Candelario*, 240 F.3d at 1309 (citation omitted). And we have expressly rejected Laines's argument that, in the light of the decision in *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), we must look to the sentence that the particular defendant could have received under the sentencing guidelines instead of the statutory maximum. *See United States v. Gardner*, 34 F. 4th 1283, 1288, 1289 & n.3 (11th Cir. 2022).

Our dissenting colleague credits Laines's argument that the prosecution failed to carry its burden of proving that the Florida definition of cocaine is coextensive with or narrower than the federal definition. Dissenting Op. at 1. When Laines was convicted of possessing cocaine with intent to sell, Florida law encompassed, as it still does, "any" stereoisomer of cocaine, FLA. STAT. § 893.03(2)(a)(4) (1991), but federal law covered only "optical and geometric isomers," 21 U.S.C. § 812(c), Sched. II(a)(4) (1988 & Supp. 1991). Isomers are "molecules that have the same numbers of the same kinds of atoms . . . but differ in chemical and physical properties," and "stereoisomers are isomers that have the same composition . . . but that differ in the orientation of those parts in space." Maitland Jones, *Isomerism*, ENCYCLOPEDIA BRITANNICA (updated Apr. 6, 2023), https://www.britannica.com/science/isomerism. Laines argues that the Florida statute's inclusion of "any" stereoisomer of cocaine makes it broader than the federal prohibition.

The dissenting opinion contends that our recent decision in *Chamu v. U.S. Attorney General*, 23 F.4th 1325 (11th Cir. 2022), makes it "clear that the government has not yet met its burden to show that Laines's prior conviction for cocaine distribution . . . qualifies as a predicate offense." Dissenting Op. at 1. In that case, an alien facing deportation similarly argued that Florida's definition of cocaine was broader than the federal definition. *Chamu*, 23 F.4th at 1327, 1329. We disagree.

*Chamu* is distinguishable. *Chamu* addressed whether a conviction under Florida Statutes section 893.13(6)(a) is "relat[ed] to a controlled substance" for the purpose of the Immigration and Nationality Act, *id*. at 1329 (quoting 8 U.S.C. § 1182(a)(2)(A)(i)(II)), not whether a conviction under Florida Statutes section 893.13(1)(a)(1) is a "serious drug offense" within the meaning of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). We held that Chamu failed to establish that cocaine has stereoisomers other than those covered by federal law. *Chamu*, 23 F.4th at 1331. Indeed, we stated that we "seriously doubt[ed]" that Chamu's "assertions ha[d] any scientific basis." *Id*. at 1332. So "[w]e decline[d] to hold that Florida's statute is broader than its federal counterpart based only on the possibility that it *might* be so." *Id*. at 1331. *Chamu* did not abrogate our precedents about a prior conviction under Florida Statutes section 893.13(1) qualifying as a "serious drug offense" under the Armed Career Criminal Act.

Laines has not satisfied his burden on appeal of establishing that his sentencing classification was plainly erroneous. Under our

precedents, the burden lies with Laines, as the *appellant*, to establish that the district court plainly erred. *See, e.g.*, *Kushmaul*, 984 F.3d at 1363 (holding that "the defendant bears the burden" to establish plain error). At sentencing, Laines never objected to his classification as an armed career criminal, so the government satisfied its burden in the district court. *See United States v. Lopez-Garcia*, 565 F.3d 1306, 1323 (11th Cir. 2009) (explaining that a defendant's failure to object to facts alleged in a presentence investigation report "admits those facts for sentencing purposes"). And Laines has identified no precedent that would make it "'obvious' or 'clear under current law'" that the Florida definition of cocaine is overbroad. *See Candelario*, 240 F.3d at 1309 (citation omitted).

### D. No Plain Error Occurred in Calculating Laines's Advisory Sentencing Guidelines Range.

Laines argues for the first time on appeal that his "advisory sentencing guideline range was erroneously calculated." He contends that because his "prior conviction is not a serious drug offense, he no longer qualifies for either the statutory sentencing enhancement under [the Armed Career Criminal Act] or the corresponding guideline enhancement." *See* United States Sentencing Guidelines Manual § 4B1.4 (Nov. 2021). Because the district court did not plainly err in determining that Laines previously committed a serious drug offense under the Act, it also did not plainly err in applying the corresponding guideline enhancement.

22                    Opinion of the Court                    20-12907

### IV. CONCLUSION

We **AFFIRM** Laines's convictions and sentence.

20-12907                Rosenbaum, J., Dissenting in Part                1

Rosenbaum, Circuit Judge, Dissenting in Part:

Napoleon Bonaparte said, "Respect the burden."[1]  Of course, he was not talking about collateral effects of prior convictions.  But as it turns out, that quotation is apt when we are.

Who bears the burden of proving that a prior conviction qualifies as a predicate conviction or doesn't under the Armed Career Criminal Act ("ACCA") is the deciding factor in this case.  And that factor requires us to vacate Laines's ACCA-enhanced sentence because the government bore the burden in the district court of proving that ACCA applies, but it failed to do so.

So while I agree with the Majority Opinion that Laines's convictions should be affirmed,[2] I disagree with its conclusion that

---

[1] Ralph Waldo Emerson, *Napoleon; Or, the Man of the World from Representative Men*,     https://www.napoleon.org/en/history-of-the-two-empires/articles/napoleon-or-the-man-of-the-world-from-representative-men-1850/.

[2] For the reasons the Majority Opinion discusses, Laines received a fair trial. And while we can't expect anyone—including prosecutors—to be perfect, the government's several errors here are troubling.  These errors include, among other things, Agent Perry's improper testimony, Officer Blanco's warrantless search, the government's failure to disclose the warrantless search, and the government's failure to disclose Officer Yanes-Martel's misconduct investigations.  Indeed, even the government (rightly) concedes it erred in several ways, stating, "[i]n retrospect," it would have done some things differently.  While the government's candor is admirable, we have often said that the government "owes a heavy obligation to the accused" to ensure a fair trial.  *United States v. Wilson*, 149 F.3d 1298, 1303 (11th Cir. 1998) (quoting *Dunn v. United States*, 307 F.2d 883, 885 (5th Cir. 1962)).  The government must do better to avoid these types of errors, and the U.S. Attorney's Office should study this case to ascertain areas where its prosecutors need some more training.

2                    ROSENBAUM, J., Dissenting in Part          20-12907

Laines's enhanced sentence was proper. After our decision in *Chamu v. U.S. Attorney General*, 23 F.4th 1325 (11th Cir. 2022), it's clear that the government has not yet met its burden to show that Laines's prior conviction for cocaine distribution under Fla. Stat. § 893.13(1)(a)(1) qualifies as a predicate offense for a sentence enhancement under ACCA. In light of *Chamu*, I would "respect the [government's] burden" here, vacate Laines's sentence, and remand to the district court to allow the government an opportunity to meet its burden.

I divide my discussion into two substantive parts. In Section I, I explain why the government bore the burden to establish that Laines's Florida cocaine-trafficking conviction qualifies as a predicate crime under ACCA and how it failed to do so. And Section II shows that the government's failure to establish that Laines's conviction serves as a predicate crime under ACCA caused plain error requiring remand for a new sentencing.

**I.**

Laines asserts that his conviction under Fla. Stat. § 893.13(1)(a)(1) cannot serve as a predicate offense because Florida's definition of "cocaine" is broader than the federal definition of "cocaine," so a conviction under Florida law cannot categorically qualify as a "serious drug offense" under ACCA.

To understand Laines's argument, we must consider the Florida and federal definitions of "cocaine" for purposes of controlled-substance offenses. Florida law defines "cocaine" as "[c]ocaine or ecgonine, including *any* of their stereoisomers, and

any salt, compound, derivative, or preparation of cocaine or ecgonine." Fla. Stat. § 893.03(2)(a)(4) (emphasis added). Meanwhile, federal law controls "cocaine, its salts, optical and geometric isomers, and salts of isomers." 21 U.S.C. § 812, Sched. II(a)(4). As we have explained, optical and geometric isomers "are kinds of stereoisomers." *United States v. Phifer*, 909 F.3d 372, 377 n.5 (11th Cir. 2018). But they are not the only kinds of stereoisomers. In *Chamu*, we recognized that nongeometric diastereomers are another type of stereoisomer. *See Chamu*, 23 F.4th at 1331. So, Laines reasons, if nongeometric diastereomers of cocaine exist, the Florida definition of "cocaine" is broader than the federal definition (which includes only optical and geometric isomers), and a Florida conviction for trafficking cocaine cannot categorically qualify as a "serious drug offense" under ACCA. *See Mathis v. United States*, 579 U.S. 500, 505 (2016).

No one disputes Laines's conclusion that if nongeometric diastereomers of cocaine exist, his Florida cocaine-trafficking conviction cannot be an ACCA predicate offense because then the Florida law criminalizes conduct that the federal law does not. And in fact, because of that possible mismatch between the Florida and federal definitions of "cocaine," in *Chamu*, we explained that we could not "hold that Florida's definition of cocaine is completely consistent with the federal definition." *Chamu*, 23 F.4th at 1332. But unlike Laines's criminal case, *Chamu* was an immigration case. So in *Chamu*, the burden fell on the migrant petitioner there to prove that his conviction did not qualify as a removal crime. As a result, we concluded we could "hold that [the petitioner] ha[d] failed to

prove that [Florida law] covers more substances [than federal law]," *id.*, even though it was not clear that the Florida law did not include more substances than the federal law.

We can't say the same thing here, though. Unlike in the immigration context, in the criminal-sentencing environment, the government bears the burden of proving any sentencing enhancement—including an ACCA enhancement—applies. The Supreme Court has recently emphasized this point, contrasting the burden of proving whether a prior conviction affects removability under the Immigration and Nationality Act ("INA") and whether a prior conviction can yield an enhanced sentence under ACCA. *Pereida v. Wilkinson*, 141 S. Ct. 754 (2021). In *Pereida*, the Court explained that both ACCA and the INA "may call for the application of the categorical approach. But while *the ACCA's categorical approach demands certainty from the government*, the INA's demands it from the alien." *Id.* at 766 n.7 (emphasis added). In other words, who bears the burden to prove a given crime categorically qualifies or not—the government or the individual—depends on the type of case involved— an immigration matter or a criminal sentencing. And we must respect the difference in the burdens.

*Pereida*'s recognition that the government must carry the burden to prove a prior conviction qualifies as an ACCA predicate is nothing new. Our case law has long held the same thing. *United States v. Hernandez*, 145 F.3d 1433, 1440 (11th Cir. 1998) ("'The burden of proof for establishing that a sentencing enhancement is warranted lies with the prosecution, and it is the duty of the district

court to insure that the prosecution carries its burden of proof."). *See also*, *e.g.*, *United States v. Lee*, 586 F.3d 859, 866 (11th Cir. 2009) ("The prosecution bears the burden of proving that a sentencing enhancement under the ACCA is warranted."); *United States v. Young*, 527 F.3d 1274, 1277 (11th Cir. 2008) (quoting *Hernandez*, 145 F.3d at 1440). And as recently as 2019, we again repeated this sentiment: "[t]he government bears the burden of establishing that an ACCA sentencing enhancement is warranted." *United States v. Harris*, 941 F.3d 1048, 1051 (11th Cir. 2019).

So after *Chamu* recognized that, by its terms, the Florida definition of "cocaine" may be broader than the federal definition, it's clear that the government bore the burden at Laines's sentencing to show that no stereoisomers other than optical and geometric isomers of cocaine exist.

The government can satisfy its burden in a couple of ways.

*First*, in the ordinary case, the government is often able to discharge its burden by comparing the text of the underlying state statute to the text of the federal statute and proving that the language of the state statute does not sweep more broadly than the language of the federal statute does. *See, e.g.*, *United States v. Vail-Bailon*, 868 F.3d 1293, 1303 (11th Cir. 2017) (en banc) (holding that "[b]y its plain terms, felony battery in violation of Florida Statute § 784.041 requires the use of physical force" and therefore constitutes a "crime of violence" for ACCA purposes); *United States v. Harrison*, 56 F.4th 1325, 1336 (11th Cir. 2023) (comparing plain

language of Georgia offense for robbery by intimidation to federal generic definition of robbery).

But crucially, after *Chamu*, the government cannot make that showing in this case because we have acknowledged that "we cannot hold that Florida's definition of cocaine is completely consistent with the federal definition." *Chamu*, 23 F.4th at 1332. That conclusion followed from our observation that "stereoisomers include at least one chemical subset that is not listed in federal law—nongeometric diastereomers." *Id.* at 1331.

Along the same lines, the government can also meet its burden to establish an ACCA predicate by pointing to controlling precedent that already answers the question of whether a defendant's prior conviction qualifies as a predicate offense. *See United States v. Fritts*, 841 F.3d 937, 940 (11th Cir. 2016); *United States v. White*, 837 F.3d 1225, 1231, 1235 (11th Cir. 2016). The government seeks to do so here, arguing that it is "settled law" that convictions under Fla. Stat. § 893.13(1) are categorically "serious drug offenses" under our decisions in *United States v. Travis Smith*, 775 F.3d 1262, 1267 (11th Cir. 2014), and *United States v. Xavier Smith*, 983 F.3d 1213, 1223 (11th Cir. 2020).

But we have recently explained that the *Smith* decisions "construed the part of ACCA's 'serious drug offense' definition that requires the state offense to involve the *conduct* of 'manufacturing, distributing, or possessing with intent to manufacture or distribute.'" *United States v. Jackson*, 55 F.4th 846, 853 (11th Cir. 2022) (emphasis in original), *cert. granted*, 2023 WL 3440568 (U.S. May 15,

2023). They did not involve the part of ACCA's definition that Laines challenges here—the definition of a "controlled substance." *Id.* at 853–54. As we explained in *Jackson*, the most that can be said about the *Smith* decisions is that they "assumed that [ACCA's] 'serious drug offense' definition and section 893.13(1) encompass the same universe of substances." *Id.* at 854. But those decisions' assumptions do not address the aspect of ACCA that is germane to Laines's arguments, so they do not resolve Laines's challenge.

The Majority Opinion appears to credit the government's argument that the *Smith* decisions resolve Laines's challenge. It cites those decisions for the contention that "[w]e have held that a conviction under section 893.13(1) qualifies as a 'serious drug offense' under [ACCA]," and then says that "Laines has identified no decision overruling or abrogating these precedents." Maj. Op. at 20. But in relying on the *Smith* decisions, the Majority Opinion ignores *Jackson* and its explanation that the *Smith* decisions are not controlling in cases like this one that "ask[] us to construe the part of ACCA's 'serious drug offense' definition that requires the state offense to involve 'a controlled substance (as defined in section 102 of the Controlled Substances Act, 21 U.S.C. § 802)).'" *Jackson*, 55 F.4th at 853 (quoting 18 U.S.C. § 924(e)(2)(A)(ii) (alteration adopted).[3]

To be sure, *Jackson* did not purport to abrogate the *Smith* decisions. But it clarified that the government cannot rely on the

---

[3] Because we issued *Jackson* after Laines filed his briefs, Laines cannot be faulted for not identifying *Jackson*.

*Smith* decisions to conclude that § 893.13(1) is a "serious drug of-fense" in every circumstance.  Those decisions did not sweep so broadly.  Rather, they answered only the question of whether con-victions under § 893.13(1) can qualify as an ACCA predicate despite that statute's lack of a mens rea element with respect to the illicit nature of the controlled substance.  *Travis Smith*, 775 F.3d at 1267–68; *Xavier Smith*, 983 F.3d at 1223.  The *Smith* decisions' conclusion on that front is binding—but not any broader conclusion that pur-ports to foreclose all potential challenges to § 893.13(1)'s status as an ACCA predicate.  As we've said many times, "regardless of what a court says in its opinion, the decision can hold nothing beyond the facts of that case."  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010).

So here, the government cannot rely on either the plain text of the statutes or controlling precedent to meet its burden.  Rather, it must find a different path.  In its only effort to do so here, the government argues that "[g]eometric and optical isomers are the two types of stereoisomers,"[4] suggesting that no other types of ste-reoisomers exist.  In support of this contention, the government cites our decision in *Phifer*.  There, we said "[o]ptical and geometric isomers . . . are sub-types of stereoisomers."  909 F.3d at 377.

But critically, we did not say those are the *only* sub-types of stereoisomers.  For good reason. *Phifer* was primarily concerned

---

[4] The government filed its brief in this case before *Chamu* was decided.

with positional isomers—a different type of isomer than stereoisomers. *Id.*

But returning to *Chamu*, we must conclude that the government's mistake is clear, and we must reject its argument. *Chamu* expressly explains that there are three categories of stereoisomers: optical isomers, geometric isomers, and nongeometric diastereomers. 23 F.4th at 1330 & n.2. So if nongeometric diastereomers of cocaine exist, then Florida's definition of the substance is categorically overbroad in comparison to the federal definition.

Our sister circuits have also recognized the principle that a state statute whose definition covers more than the federal definition is categorically overbroad, so convictions under that state statute cannot categorically qualify as predicates for sentence enhancements. *See United States v. Myers*, 56 F.4th 595, 598–99 (8th Cir. 2022) (holding Missouri's definition of "cocaine" is categorically broader than federal definition); *United States v. Owen*, 51 F.4th 292, 295–96 (8th Cir. 2022) (same for Minnesota's definition of "cocaine"); *United States v. Ruth*, 966 F.3d 642, 647–48 (7th Cir. 2020) (same for Illinois's).

And a state law that controls more isomers of a controlled substance than federal law does has also led a court to hold that the state law is categorically overbroad to serve as a predicate offense for an enhanced sentence. *United States v. De La Torre*, 940 F.3d 938, 951–52 (7th Cir. 2019) (holding Indiana law criminalizing distribution of methamphetamine is categorically overbroad because state law controls more isomers than federal law does).

*Second*, the government can meet its burden by showing that it is factually impossible for the state statute to be broader than the federal statute because the chemical compound in question does not exist.  As *Chamu* explains, "[i]f cocaine does not have a nongeometric diastereomer, then the two statutes cover exactly the same ground."  23 F.4th at 1331.  To support ACCA enhancements in other cases, the government has introduced expert testimony to show there is no mismatch between a state's definition of a controlled substance and the equivalent federal definition.  *Cf. United States v. Rodriguez-Gamboa*, 972 F.3d 1148, 1151–52 (9th Cir. 2020) (affirming sentence after government presented testimony from three experts in organic chemistry that "geometric isomers of methamphetamine are impossible" (internal quotation marks omitted)); *United States v. Turner*, 47 F.4th 509, 515, 523–24 (7th Cir. 2022) (affirming sentence based on government's expert declarations that it is "impossible to create an ester or a salt of an ester of cocaine").

But the government made no such showing here.  To be sure, *Chamu* issued after Laines's sentencing.  But even before *Chamu*, the government could have anticipated this problem by comparing the text of the Florida definition to the text of the federal definition and recognizing the disparity.  And *Chamu* resolved any uncertainty about the scopes of those definitions.  After surveying the organic-chemistry landscape, we observed there that Florida law's proscription of "any stereoisomers" of cocaine is facially broader than federal law's ban on only "optical and geometric isomers" of cocaine.  23 F.4th at 1330–31 & n.2.

It's true that the *Chamu* court "seriously doubt[ed]" that nongeometric diastereomers of cocaine exist.  23 F.4th at 1332.  But even if I share those doubts, they cannot carry the day for the government here.  Because Laines's case involves a criminal sentencing, the government bears the burden to show that the enhancement applies.  And as the Supreme Court has explained, "the ACCA's categorical approach demands *certainty* from the government."  *Pereida*, 141 S. Ct. at 766 n.7 (emphasis added).

But as in *Chamu*, we are left with the question of whether nongeometric diastereomers of cocaine exist in the real world.  Just as the "dearth of evidence" about their existence was "fatal for Chamu, who b[ore] the burden of proof" there, 23 F.4th at 1332, that same dearth of evidence is now fatal for the government, which bears the burden here.  To discharge its burden to show that convictions for cocaine distribution under Fla. Stat. § 893.13(1)(a)(1) can serve as a "serious drug offense" under ACCA, the government must show that there are no nongeometric diastereomers of cocaine.

For its part, the Majority Opinion tries a couple of different paths to (incorrectly) conclude that the government satisfied its burden.

*First*, it says that the government satisfied its burden in the district court when Laines did not object to the armed-career-criminal classification.  Maj. Op. at 22.  But the Majority Opinion's attempt to rescue the government is inconsistent with how we've expressed the government's burden.  Indeed, as I noted, we've

explained that "[t]he burden of proof for establishing that a sentence enhancement is warranted lies with the prosecution and it is the duty of the district court to insure that the prosecution carries its burden of proof." *Hernandez*, 145 F.3d at 1440. Under *Hernandez*, then, even if a defendant does not object to the sentencing enhancement, the district court has an obligation to ensure that the enhancement is proper.

So a defendant's failure to object is not relevant to the inquiry and cannot relieve the government of its burden to establish the enhancement. Nor, contrary to the Majority Opinion's contention, can the fact that a defendant's "failure to object to allegations of fact in a PSI admits those facts for sentencing purposes." *United States v. Lopez-Garcia*, 565 F.3d 1306, 1323 (11th Cir. 2009). Whether a cocaine-related conviction under section 893.13(a)(1) qualifies as a "serious drug offense" is a legal question, the answer to which is the same in every case for every defendant with such a conviction. It is quite a stretch to characterize it as the type of "allegation[] of fact" that we deem admitted in a PSI if a defendant fails to object.

Rather, the way we deal with such a legal challenge when the defendant fails to raise it in the district court is to apply plain-error review. *See infra* Part II. Because the government sought to apply an enhancement, it had the burden in the district court to establish that the enhancement applies. And given *Chamu*'s recognition that the plain language of section 893.03(2)(a)(4) on its face encompasses nongeometric diastereomers, it has not done so.

*Second*, the Majority Opinion confuses Laines's burden on appeal to establish that his sentencing classification was plainly erroneous with the government's burden *in the district court* to show that the career-offender enhancement applied to Laines. *See* Maj. Op. at 22 ("Laines has not satisfied his burden on appeal of establishing that his sentencing classification was plainly erroneous. Under our precedents, the burden lies with Laines, as the *appellant*, to establish that the district court plainly erred."). Laines satisfied his burden on appeal to establish that his sentencing classification was plainly erroneous *because* the government failed in the district court to make any showing that Florida's definition of "cocaine" is not categorically broader than the federal definition of "cocaine."

## II.

The government's failure to establish that Laines's Florida cocaine-trafficking conviction qualifies as an ACCA predicate amounts to plain error here. Because Laines did not raise this issue in the district court, to prevail on appeal, Laines must not only establish that his challenge to his sentence is correct as a legal matter, but he must also satisfy the plain-error standard. Fed. R. Crim. P. 52(b).

Plain error occurs when there is (1) an error; (2) that is plain; (3) that affects the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Lewis*, 40 F.4th 1229, 1246 (11th Cir. 2022). Laines satisfies all four requirements.

14                 Rosenbaum, J., Dissenting in Part        20-12907

I begin with error. As I've noted, it was error to conclude that Laines's prior conviction can serve as a predicate offense without requiring the government to show that nongeometric diastereomers of cocaine don't exist. As Section I of this dissent explains, the text of Florida's definition of "cocaine" is facially broader than the equivalent federal definition. *See Chamu*, 23 F.4th at 1331. So the government has not yet met its burden to prove that Laines's conviction can serve as a predicate offense. *See Hernandez*, 145 F.3d at 1440 ("The burden of proof for establishing that a sentence enhancement is warranted lies with the prosecution and it is the duty of the district court to insure that the prosecution carries its burden of proof.").

Turning to the second requirement—the plainness of that error—that error is plain here as the result of two lines of cases. One, our *Hernandez* line of cases, along with the Supreme Court's recent affirmation in *Pereida*, plainly establish that in a sentencing, the government bears the burden of showing that a sentencing enhancement applies. And two, *Chamu* is directly on point in concluding that, under the wording of the Florida and federal definitions of "cocaine," uncertainty exists as to whether the Florida definition of "cocaine" is broader than the federal definition. So because uncertainty remains, the *Hernandez* and *Pereida* line of cases dictates that the burden for removing that uncertainty lies squarely on the government's shoulders.

It doesn't matter to the plain-error analysis that *Chamu* issued after Laines's sentencing. Rather, "an intervening decision by

this Court or the Supreme Court squarely on point may make an error plain." *United States v. Jones*, 743 F.3d 826, 829–30 (11th Cir. 2014) (citation and internal quotation marks omitted).  Here, *Chamu* fills that requirement because, as I've explained, it makes clear that the government has not yet met its burden to show that a Florida cocaine-distribution conviction can serve as a predicate offense for an enhanced sentence.

To be sure, *Chamu* does not definitively establish that the Florida definition of "cocaine" is broader than the federal definition or that more than two categories of stereoisomers of cocaine exist. But that makes no difference because as I've noted, in the sentencing context, the burden of resolving that open question is one the government must bear.  Without proof that nongeometric diastereomers of cocaine don't exist, we are left with a state statute that purports to sweep more broadly than federal law does.  And in such circumstances, the government cannot use convictions under the state offense to support ACCA enhancements.  *See Mathis*, 579 U.S. at 505.

Because *Chamu* makes it "plain" and "obvious" that there is potential daylight between the Florida definition of "cocaine" and the federal definition, and because the government has not met its burden to eliminate that daylight, *Chamu* establishes the plainness of the error with Laines's sentence.  On the record here, we have no reasonable basis upon which to conclude that the government has satisfied its burden.

This conclusion aligns with those of our sister circuits in similar situations. For instance, in *De La Torre*, the Seventh Circuit held that it was plain error for the district court to conclude an Indiana methamphetamine conviction could serve as a predicate offense under ACCA because the state definition of the drug was broader than federal definition, as the state definition captured additional isomers of methamphetamine. 940 F.3d at 951–53 & n.7; *see also United States v. Garcia*, 948 F.3d 789, 794 (7th Cir. 2020) (holding sentencing enhancement was plain error after concluding Indiana "marijuana" definition was broader than federal definition); *United States v. Navarro*, 54 F.4th 268, 281 (5th Cir. 2022) (finding plain error after concluding that Colorado sex-offense law was categorically overbroad to serve as predicate offense under the Sex Offender Registration and Notification Act).

Of course, Laines cannot prove that *Chamu* alone demands his sentence be vacated. Nor can he represent that he will ultimately receive a sentence without an ACCA enhancement. But at this stage, following *Chamu*, he can prove that the government hasn't satisfied its burden and that the ACCA enhancement, as it currently stands, is improper.

And even though it may seem unusual to find plain error and require the government to prove a negative based on a factual question—whether nongeometric diastereomers of cocaine exist— the Supreme Court has explained that "there is no legal basis for the . . . practice of declining to review certain unpreserved factual arguments for plain error." *Davis v. United States*, 140 S. Ct. 1060,

1062 (2020) (per curiam). So I would remand for a hearing to allow the government to introduce evidence about whether nongeometric diastereomers of cocaine exist. *Cf. United States v. Rodriguez-Gamboa*, 946 F.3d 548, 552–53 (9th Cir. 2019) (remanding for evidentiary hearing to determine whether geometric isomers of methamphetamine exist).

Although the error is plain here, I echo the Supreme Court's acknowledgment that "plain-error review is not a grading system for trial judges." *Henderson v. United States*, 568 U.S. 266, 278 (2013). Without an objection from Laines or the benefit of *Chamu*, the district court had little reason to question the government's proposed ACCA enhancement. But the plain-error standard "has broader purposes, including in part allowing courts of appeals to better to identify those instances in which the application of a new rule of law to cases on appeal will meet the demands of fairness and judicial integrity." *Id.* So now that we are equipped with *Chamu* and the knowledge that the Florida definition of "cocaine" is facially broader than the federal definition, the government must carry its burden to establish an enhanced sentence.

The third and fourth prongs of the plain-error standard ask whether the error affected Laines's substantial rights and whether the error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings in this case, respectively. *United States v. Olano*, 507 U.S. 725, 732 (1993). Laines satisfies both.

To make the "substantial rights" showing, a defendant "must show a reasonable probability that, but for the error, the

outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016). Most defendants can do so when "the district court mistakenly deemed applicable an incorrect, higher [Sentencing] Guidelines range." *Id.* at 200. Here, because of the ACCA enhancement, Laines's Guidelines range was deemed to be 270–322 months, and he was sentenced to 300 months' imprisonment. Without the enhancement, the top end of his Guidelines range would be 131 months. Under *Molina-Martinez*, that difference is sufficient.

In my view, allowing Laines's 300-month sentence to stand when the government has not met its burden to show that the enhanced sentence is warranted seriously affects the fairness, integrity, and public reputation of the proceedings here. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907–08 (2018) (explaining that "[t]he risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings").

## III.

The government has not yet met its burden to show that Laines's conviction for cocaine distribution can serve as a predicate offense for an enhanced sentence. To respect that burden, I would vacate Laines's sentence and remand to the district court for a hearing to allow the government to make the requisite showing.

I respectfully dissent.